FILED
2017 Mar-27  AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| BRANDI LEWIS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 2:16-CV-181-VEH** |
| | ) |
| NANCY A. BERRYHILL, ACTING | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| **Defendant**. | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Brandi Lewis ("Ms. Lewis") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"),[1] who denied her application for Disability Insurance Benefits ("DIB"). Ms. Lewis timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).

---

[1]  Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Lewis was 31-years old at the time of her hearing before the administrative law judge ("ALJ"). (Tr. 43). She has completed twelfth grade. (Tr. 46). Her past work experience includes employment as: (1) an inventory control worker at WalMart; (2) an assembly worker; (3) an overnight stocker; (4) a cashier; (5) a coupon machine installer and restocker; and (6) a waitress. (Tr. 77-82). Ms. Lewis claims that she became disabled on September 24, 2012. (Tr. 14). Her last period of work ended on September 24, 2012. (Tr. 16).

On October 1, 2012, Ms. Lewis protectively filed a Title II application for a period of disability and DIB. (Tr. 14, 195-196). On December 13, 2012, the Commissioner initially denied her claims. (Tr. 126-130). Ms. Lewis timely filed a written request for a hearing on February 1, 2013. (Tr. 132-3). The ALJ conducted a hearing on May 1, 2014, in Birmingham, Alabama. (Tr. 14); (*see also* Tr. 36-91). On June 13, 2014, the ALJ issued a fully unfavorable decision concluding that Ms. Lewis was not disabled and denying her DIB claim. (Tr. 11, 14-28). Ms. Lewis then on June 25, 2014, timely petitioned the Appeals Council to review the ALJ's decision that was adverse to her. (Tr. 7-9). On December 11, 2015, the Appeals Council issued a denial of review on her claim. (Tr. 1-3).

Ms. Lewis filed a Complaint with this court on January 31, 2016, seeking

2

review of the Commissioner's determination. (Doc. 1). The Commissioner answered on May 5, 2016. (Doc. 8). Ms. Lewis filed a supporting brief (Doc. 10) on June 17, 2016, and the Commissioner responded with her own (Doc. 11) on July 13, 2016. With the parties having fully briefed the matter, the court has carefully considered the record and remands the decision of the Commissioner for further development.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper

3

legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of March 16, 2017.

4

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.    Ms. Lewis met the insured status requirements of the Social Security Act through June 20, 2017. (Tr. 16).

2.    She had not engaged in substantial gainful activity since September 24, 2012, the alleged onset date. *Id.*

3.    She has the following severe impairments: degenerative disc disease at four lower levels with right sided protrusions at L4-5 and L5-S1; obesity; bipolar disorder; and, borderline personality disorder. *Id.*

4.    Ms. Lewis did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17).

5.    She has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b). She can lift, carry, push, and pull the weights associated with work at the light exertional level except that she could only ambulate short distances of up to two city blocks per instance on flat solid ground. She could frequently manipulate foot controls bilaterally. She could occasionally climb ramps and stairs, but never ladders and scaffolds. She can frequently balance and stoop, occasionally kneel and crouch, but never crawl. Ms. Lewis should never be exposed to unprotected heights, dangerous tools, dangerous machinery, or hazardous processes. She should never operate commercial motor vehicles. She could tolerate frequent exposure to atmospheric conditions and weather, but only occasional exposure to humidity, wetness, extreme cold and heat, and workplace vibrations. She could tolerate moderate noise levels, but should never be exposed to concentrated dust, fumes, gases, or other pulmonary irritants. Ms. Lewis can only remember short,

6

simple instructions and would be unable to deal with detailed or multi-step instructions. She should have only occasional contact with the general public or co-workers, but could tolerate frequent contact with supervisors. Ms. Lewis, in addition to normal breaks, would be off task approximately five percent of an eight-hour workday. She would require an at will sit/stand option with the retained ability to stay on or at a workstation in no less than thirty minute increments each without significant reduction or remaining on task. (Tr. 19-20).

6.   Ms. Lewis is unable to perform any past relevant work. (Tr. 26).

7.   She was 29 years old on the alleged disability onset date, which is defined as a younger individual age 18-49. *Id.*

8.   She has a high school education and is able to communicate in English. *Id.*

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. *Id.*

10.  There are jobs that exist in significant numbers in the national economy that Ms. Lewis can perform. (Tr. 27).

11.  Ms. Lewis has not been under a disability, as defined in the Social Security Act, from September 24, 2012, through the date of this decision. (Tr. 28).

## ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). This standard is met if a reasonable person would find that the evidence of record is sufficient to support the challenged

7

conclusion. *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[3] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the Commissioner." *Walden*, 672 F.2d at 838 (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)).

## I.   The ALJ's Conclusion that Ms. Lewis Was Not Disabled Is Not Supported by Substantial Evidence.

Objecting only to the ALJ's findings that are attributable to her mental impairments, Ms. Lewis contends that the ALJ improperly applied the pain standard (Doc. 10 at 3); and that he "erred in his evaluation of the opinion evidence in this case." (Doc. 10 at 9). In its review, the court agrees with Ms. Lewis that the ALJ committed reversible error in his consideration of the medical evidence and that Ms. Lewis's case is due to be remanded for further development.[4]

---

[3] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

[4] Thus, the court does not reach the merits of Ms. Lewis's first contention concerning the ALJ's misapplication of the Eleventh Circuit pain standard.

**A.**     **The ALJ Misstated the Meaning of Ms. Lewis's Multiple GAF Scores of 50, Confusingly Addressed the Extent of His Acceptance of Those Scores, and Completely Ignored Her Lower GAF Score of 30.**[5]

In assigning partial weight to the opinions of several doctors who Ms. Lewis relies upon to substantiate her inability to work due to depression and other disabling symptoms caused by her mental impairments of bipolar disorder and borderline personality disorder, the ALJ stated:

> [T]he undersigned assigns partial weight to the opinions of treating and examining physicians, Dr. Lucas, Dr. Hammel, and Dr. Badari (Exhibits 2F-4F). All had the opportunity to examine the claimant and her medical records. Their reports have been useful in determining the full scope of the claimant's impairments. Dr. Hammel and Dr. Lucas assigned her a Global Assessment of Functioning (GAF) score of 50, <u>indicative of only moderately severe symptoms and limitations</u>; however, the undersigned finds that based on subsequent records and the claimant's reported abilities, she is less limited than indicated by Dr. Lucas, Dr. Hammel, and Dr. Badari. Therefore, their opinions are assigned partial weight.

(Tr. 25-26 (emphasis added)).

---

[5]   "Axis V [of the Multiaxial Assessment] is for reporting the clinician's judgment of the individual's overall level of functioning." *Diagnostic and Statistical Manual of Mental Disorders* [hereinafter *DSM-IV-TR*] at 32, American Psychiatric Association (4th ed. text revision, 2000). "This [functional] information is useful in planning treatment and measuring its impact, and in predicting outcome." *Id.* GAF stands for "Global Assessment of Functioning" and the "GAF Scale" may be used to report such "overall functioning." *Id.* "The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning. . . . [and] is divided into 10 ranges of functioning." *Id.* The most recent edition of the *Diagnostic and Statistical Manual of Mental Disorders* [hereinafter *DSM-5*], American Psychiatric Association (5th ed. 2013), has dropped the GAF Scale and included a different global functioning measure–"the WHO Disability Assessment Schedule (WHODAS) . . . ." *DSM-5* at 16.

The court finds several flaws in the ALJ's GAF analysis. First, although the ALJ acknowledged Ms. Lewis's multiple GAF scores of 50 that were separately documented by different doctors prior to filing her DIB claim (Tr. 283 (June 4, 2012, by Dr. Joseph P. Lucas)); (Tr. 302 (July 10, 2012, by Dr. Jacey Hammel)), he incorrectly stated the meaning of those mental functioning assessments. A GAF of 50 does not reflect "moderately severe" limitations in mental functioning. Instead, a GAF of 50 indicates:

> **Serious symptoms** (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (*e.g.*, few friends, unable to keep a job).

*DSM-IV-TR* at 34 (emphasis by underlining added); *see McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) ("First, the parties agree that the ALJ erred when he labeled McCloud's 1998 GAF score as reflective of moderate symptoms."). Because the ALJ mistakenly described the import of Ms. Lewis's GAF scores of 50, his conclusion that Ms. Lewis's limitations were less limited than "moderately severe" is built upon a faulty premise and cannot be affirmed.

Second, the ALJ never expressly accepted or rejected Ms. Lewis's GAF scores of 50. Instead, based upon "subsequent records and the claimant's reported abilities," the ALJ appears to have implicitly placed only partial weight on those GAF results

(*i.e.*, treating the scores like medical opinions) that he incorrectly characterized as reflecting a level of moderate limitations. (*See* Tr. 27 ("Therefore, [the opinions of Drs. Lucas, Hammel, and Badari] are assigned partial weight.")).

Third, the ALJ did not identify which specific subsequent documents or reported activities he relied upon to dispute the validity of the reported GAF measurements of Ms. Lewis's mental functioning, much less explain why the conclusion he drew–that Ms. Lewis was not as limited as her reported GAF scores of 50–made sense. As a result, the court is left to speculate as to the evidence relied upon to support the ALJ's reasoning and, in turn, the sufficiency of that evidence. While the substantial evidence standard is a highly deferential one, the appellate review process, nonetheless, demands an administrative decision that removes the need for guesswork. *See Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984) ("A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful.").

Fourth, the ALJ completely ignored the GAF of 30 that was reported by Dr. Lucas when Ms. Lewis was admitted to Brookwood Medical Center on May 22, 2012. (Tr. 283). A result of 30 signifies:

> **Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment** (e.g., sometimes in coherent, acts grossly inappropriately, suicidal

preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day; no job, home, or friends.

*DSM-IV-TR* at 34. Assuming that the ALJ's lack of clarity in the handling of Ms. Lewis's GAF scores of 50 falls short of reversible error, the totally unaddressed GAF of 30 would, nonetheless, necessitate a remand because of the serious challenges that are expected to be present in a claimant with that low level of mental functioning. "It is not enough to discover a piece of evidence which supports the decision, but to disregard other contrary evidence." *McCruter v. Bowens*, 791 F.2d 1544, 1548 (11th Cir. 1986); (*see also* Tr. 283 ("Long-term prognosis of course is guarded, but at this point more stable.") (emphasis added)); (*cf. also* Tr. 19 (acknowledging that Ms. Lewis was hospitalized four times for decompensation in 2011)).

Fifth, the unaddressed GAF result of 30 is at odds with the well-settled rule within the Eleventh Circuit that an ALJ must state specifically the weight accorded each item of evidence and the reasons for his decision. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision."); *Cowart*, 662 F.2d at 735 ("In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."); *Hudson v.*

12

*Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) ("The decision rendered by the ALJ also does not make clear the weight accorded the evidence considered."); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) ("We cannot, however, conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." (citing *Owens*, 748 F.2d at 1514-15)).

In *McCloud*, the Eleventh Circuit reversed and remanded because the ALJ completely disregarded a GAF score of 48 and was unclear about the weight he afforded the claimant's GAF of 45. 166 F. App'x 410, 418; *see id.* ("In addition to this error, the ALJ failed to consider McCloud's GAF score of 48 from June 2000, which occurred just days before she filed for SSI benefits, when determining whether she was disabled."). Comparable to the situation in *McCloud*, the ALJ in the present case misstated the meaning of Ms. Lewis's GAF scores of 50 and then attempted to implicitly discredit those scores in a vague manner, leaving this reviewing court to guess as to the ALJ's conclusion and reasoning. He also ignored Ms. Lewis's lower score of 30.[6] Although *McCloud* is a non-binding Eleventh Circuit opinion, the court

---

[6] The court questions, but is not entirely certain, whether the record contains other GAF information for Ms. Lewis. (*See* Tr. 299 (reflecting "50" for session with Dr. Hammel on July 23, 2012)); (*see* Tr. 298 (reflecting "50" for session with Dr. Hammel on July 30, 2012)); (*see* Tr. 297 (reflecting "45" for session with Dr. Hammel on August 9, 2012)); (*see* Tr. 295 (reflecting "45" for session with Dr. Hammel on August 21, 2012)); (*see* Tr. 293 (reflecting "50" for session on September 14, 2012)).

agrees with its analysis that recognized the importance of considering or at least explaining the weight of multiple, distinct GAF scores.[7]

The court acknowledges the Commissioner's citation to several unpublished Eleventh Circuit cases for the proposition that "the Commissioner has specifically declined to endorse using the GAF scale because it does not have a direct correlation to the severity requirements in the Commissioner's mental disorders listings" and her point that "the GAF scale was dropped from the most recent edition of the DSM." (Doc. 11 at 9-10); *see also Hellman v. Barnhart*, 48 F. App'x 26, 30 n.1 (3d Cir. 2002) (recognizing that a GAF score "is not in and of itself determinative of disability").

Nonetheless, <u>because the ALJ expressly relied upon Ms. Lewis's GAF scores of 50 to reach his decision</u>, an examination of his handling of the GAF evidence on appeal is appropriate. Also, although the Commissioner correctly points out in her

---

[7] The undersigned has also rendered several decisions which relate to the ALJ's inadequate treatment of record evidence from which the analysis and disposition of this case persuasively flow. *See Roberson v. Astrue*, No. 3:07-CV-1541-VEH, (Docs. 10, 11) (N.D. Ala. June 11, 2008) (reversing and remanding under very similar circumstances where the court found that the ALJ's treatment of competing GAF scores was not adequate); *see also Seidman v. Astrue*, No. 6:07-CV-1921-VEH, (Docs. 11, 12) (N.D. Ala. June 30, 2008) (reversing and remanding when "the ALJ failed to explain why Dr. Harrison's opinion was found to be consistent with the very medical evidence that the ALJ used to conclude that [the claimant] was not disabled when Dr. Harrison used such findings to determine that [the claimant] was disabled"); *Banks v. Astrue*, No. 7:08-CV-0395-VEH, (Docs. 11, 12) (N.D. Ala. Oct. 21, 2008) (reversing and remanding when ALJ failed to adequately address claimant's multiple GAF scores); *but compare Carlisle v. Astrue*, No. 3:06-CV-0983-VEH, (Docs. 11, 12) (N.D. Ala. June 5, 2007) (affirming the Commissioner's decision when the ALJ afforded little weight to a GAF score of 45, but clearly explained his reason for doing so).

brief that Ms. Lewis received a GAF score of 51 (Tr. 387); (Doc. 11 at 9) in March 2014, which is indicative of moderate mental limitations,[8] the ALJ did not reference this particular evidence <u>anywhere</u> in his decision, and the Commissioner cannot amend the ALJ's decision through her brief. Therefore, the lack of clarity in this ALJ's decision makes this appeal significantly distinguishable from the record reviewed in *McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016) ("That argument fails because even if a GAF score of 50 denotes more than nondisabling symptoms, <u>the ALJ found that during the same time period, McGriff obtained GAF scores greater than 50 and that her GAF scores continued to improve with treatment</u>.") (emphasis added). Consequently, the court rejects the Commissioner's invitation (Doc. 11 at 9 n.2) to treat the ALJ's GAF errors as harmless ones–the court cannot conclude that correcting these errors would not change the ALJ's decision. *Cf. Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless-error rule to irrelevant mistakes that ALJ made in his analysis of (i) vocational factors and (ii) the claimant's past work experience given the ALJ's overriding finding that the claimant had no severe impairment).

Therefore, Ms. Lewis's case is due to be remanded on account of the ALJ's multiple errors in his treatment of the GAF evidence.

---

[8]  *DSM-IV-TR* at 34.

**B.      The ALJ Improperly Disregarded the Eleventh Circuit's Rules in Assigning Weight to the Various Medical Opinions.**

The court also finds that the ALJ committed reversible error in his treatment of the medical opinions. With respect to an ALJ's consideration of medical opinions, the following framework applies:

> In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Further, he was required to accord considerable weight to appellant's treating physician's opinion absent good cause for not doing so. *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 1985) (per curiam). The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, <u>when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence</u>. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam). Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).
>
> The ALJ, here, disregarded these rules in assigning weight to the various medical opinions. <u>The only opinions that indicated that appellant could meet the medium work requirements of 20 C.F.R. 404.1567(c) (1986) were those of the nonexamining physicians, Drs. Thomas and Register. Their opinions were entitled to little weight, however, and could not serve as substantial evidence</u>.

*Shafarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987) (emphasis added).

Here, the ALJ's decision runs afoul of these rules. More specifically, in evaluating the vocational impact of Ms. Lewis's mental impairments, the ALJ

"assign[ed] great weight to the opinions expressed by the non-examining State agency physician, Robert Estock, M.D." rendered on December 13, 2012. (Tr. 26, 123). As justification for doing so, the ALJ maintained that:

> Dr. Estock had the opportunity to review the claimant's available medical records and completed a summary of the record on December 13, 2012. His opinion in regards to the claimant's limitations is supported by <u>detailed reports based on comprehensive assessments of the claimant's abilities</u> and significant experience and knowledge of agency requirements. His opinion is consistent with the record when considered in its entirety and consistent with the aforementioned residual functional capacity and therefore assigned great weight.

(Tr. 26 (emphasis added)). The ALJ did not indicate which detailed reports Dr. Estock relied upon in formulating his mental assessment of Ms. Lewis. Further, <u>Dr. Estock's assessment did not refer to any such reports</u>. (Tr. 120-24).

Dr. Estock provided the only opinion within the record that Ms. Lewis is not disabled despite the impact of her mental impairments. (Tr. 123). His paper review opinion is at odds with the import of Ms. Lewis's GAF scores as set out above and the opinions of her examining/treating physicians. (*See, e.g.*, Tr. 283 ("Long-term prognosis of course is guarded, but at this point more stable.")).

The validity of Dr. Estock's opinion is further undermined by the indication that he did not consider the examining/treating source records of Drs. Lucas, Hammel, and Badari, including Ms. Lewis's GAF scores, when making his mental

capacity assessment of Ms. Lewis. (*See* Tr. 122 (reflecting in "**RECONCILIATION OF SOURCE OPINION**" section that "[t]here is no indication that there is opinion evidence from any source")). Therefore, Dr. Estock's opinion was entitled to little weight and cannot serve as substantial evidence to support the ALJ's decision. *Shafarz*, 825 F.2d at 280.

Additionally, while the ALJ attempted to explain why he gave only partial credit to the opinion of Dr. Hammel, who undoubtedly qualifies as Ms. Lewis's treating psychiatrist,[9] the vagueness of that effort falls short of the good cause measure. (*See* Tr. 26 ("[H]owever, the undersigned finds that based on subsequent records and the claimant's reported abilities, she is less limited than indicated by … Dr. Hammel . . . .")); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986))); *Lewis*, 125 F.3d at 1440 ("A similar preference for the opinions of treating doctors is found in the Commissioner's regulations[.]" (citing 20 C.F.R. § 404.1527(d)(2), but

---

[9] According to the treatment notes from Grayson & Associates, P.C., Ms. Lewis saw Dr. Hammel on an outpatient basis on July 10, 2012 (Tr. 302); July 23, 2012 (Tr. 299); July 30, 2012 (Tr. 298); August 9, 2012 (Tr. 297); August 15, 2012 (Tr. 296); August 21, 2012 (Tr. 295); and September 14, 2012. (Tr. 293).

such treating-source preference (for claims filed before March 27, 2017) now appears in 20 C.F.R. § 404.1527(c)(2))).[10]

In particular, the ALJ did not clarify which subsequent record or reported ability he relied upon to discount Dr. Hammel's opinion about the serious low level of Ms. Lewis's mental functioning. Further, without indicating the specific evidence he did rely upon, it is impossible for the court to evaluate whether the ALJ's cause for discounting Dr. Hammel's opinion was good or bad. *See Jackson v. Astrue*, No. CV-107-020, 2008 WL 596769, at *7 (S.D. Ga. Mar. 4, 2008) ("[T]he law requires the Commissioner to provide a well-reasoned, well articulated decision."); *id.* ("Without such an analysis, the federal courts are unable to provide claimants with a sound, meaningful review of the administrative decision.").

In arguing that the ALJ committed no error in his great reliance upon Dr. Estock's mental assessment of Ms. Lewis, the Commissioner claims that "[t]he Eleventh Circuit has found that an ALJ may properly accord more weight to state agency physician opinions than to treating physician opinions." (Doc. 11 at 11). The court has studied the two unpublished opinions cited by the Commissioner and finds

---

[10]   20 C.F.R. § 404.1520c establishes a new regulatory framework for considering and articulating the value of medical opinions for claims filed on or after March 27, 2017. *See* 82 FR 5867, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective Mar. 27, 2017).

them to be distinguishable.[11]

First, in *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869 (11th Cir. 2011), the court explained why "the ALJ had good cause to not give [a particular opinion of one of the claimant's treating physicians–Dr. Mian] substantial weight." 422 F. App'x at 874. Further, because the opinions of the state agency medical consultants "did not otherwise contradict Dr. Mian's or any other doctor's treatment records, the ALJ did not err in relying on the reports of these non-examining physicians." *Id.* As pointed out above, Ms. Lewis's case is unlike *Jarrett* because of the conflict between the GAF scores and other treatment information reported by Drs. Hammel and Lucas versus Dr. Estock's mental assessment of Ms. Lewis after reviewing only a partial medical record. (*See* Doc. 11 at 11 ("Although Dr. Estock did not review the entire medical record . . . .")).

*Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892 (11th Cir. 2013), is similarly distinguishable because, in that case, the panel agreed that the ALJ had properly discredited the opinions of the claimant's treating physicians. 503 F. App'x at 893. Also, the nonexamining board-certified neurologist in *Forsyth*, "had expertise in this

---

[11] These decisions are also non-binding on this court. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008) ("However, because *Palmer* is an unpublished decision, it is not binding precedent.").

field, had studied the entire record, and was subjected to questioning by the ALJ and Forsyth's attorney." *Id.* In sharp contrast to *Forsyth*, this court has found reversible error in the ALJ's efforts to discredit the opinion of Dr. Hammel. Further, the mental functional assessment that Dr. Estock prepared on Ms. Lewis does not indicate that he is a specialist (*see* Tr. 122 ("Robert Estock M.D.")), the Commissioner has confirmed that Dr. Estock reviewed an incomplete medical record (Doc. 11 at 11), and Dr. Estock was not made available for questioning at the administrative hearing. (*See* Tr. 34 (listing persons in attendance at hearing held on May 1, 2014)).

Therefore, the Commissioner's cases are unpersuasive, and Ms. Lewis's case is alternatively due to be remanded on account of the ALJ's failure to follow the Eleventh Circuit's framework for assigning weight to medical opinions.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the Commissioner's decision is **REVERSED** and the case **REMANDED** for further development.

**DONE** this 27th day of March, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge